### STEAM-GAUGE & LANTERN Co. *v.* HAM MANUF'G Co.[1]

*(Circuit Court, N. D. New York.    September 15, 1886.)*

1. PATENTS FOR INVENTIONS—CONSTRUCTION OF CLAIM.
    The second claim of letters patent No. 244,944, of July 26, 1881, to Joseph
    B. Stetson, for an improvement in lanterns, being for "the tubular frame, D,
    D', and the globe, G, in combination with the plates, C, p, the connecting
    rods, F, and the guides, H, whereby said globe is raised by a suitable lever,
    and guided or steadied laterally in its movements, for the purpose set forth,"
    construed, and *held,* that said claim is not limited to the precise apparatus
    mentioned in the fourth claim of the patent, nor to any particular mechanism
    for raising and lowering the globe.

2. SAME—RULES OF CONSTRUCTION.
    A patent is to be construed according to its true intent and meaning, so as
    to give the inventor the benefit of what he has actually invented, even though
    his claims be carelessly or inartificially drawn.

3. SAME—EQUITABLE ESTOPPEL.
    A company defendant whose president and trustees, with one exception,
    had recently occupied positions of trust and confidence under complainant,
    and had continually recognized and asserted the validity of a patent, is not in
    position, when sued for infringement, to demand that the rules of equity shall
    be strained in its behalf.

Motion for a Preliminary Injunction.

*Edwin S. Jenney,* (*Louis Marshall,* with him,) for complainant.

*George B. Selden,* for defendant.

COXE, J.    The bill alleges the infringement of two patents owned
by the complainant.    The questions arising upon the patent granted
to John H. Irwin, February 1, 1870, No. 99,442, were disposed of
at the close of the argument.    The patent granted to Joseph B. Stet-
son, for an improvement in lanterns, July 26, 1881, No. 244,944,
alone remains to be considered.    The invention relates to devices

[1] Edited by Charles C. Linthicum, Esq., of the Chicago bar.

for detaching, raising, supporting, and lowering the glass globe of a tubular lantern, in order that the globe may be cleaned and the lamp filled, trimmed, lighted, or extinguished. It was stated on the argument that the validity of the patent in question must shortly be passed upon in an action pending in the district of Massachusetts, which has been finally submitted, and is now awaiting the action of the judge. In these circumstances, it is thought to be for the advantage of both parties that they should have the benefit of a decision made upon final hearing, based upon evidence which has been carefully scrutinized, and upon the testimony of witnesses who have been examined and cross-examined. A record so made up is, necessarily, far more satisfactory than the *ex parte* proof presented upon a motion of this character, supplemented though it be by the opinions of those ancillary counselors called experts, whose arguments upon the law and the facts terminate in a jurat, and are frequently referred to as affidavits.

Upon the question of infringement, it is quite clear that the defendant's lanterns have the tubular frame and the globe, in combination with the concave annular top plate, the perforated bottom plate, the connecting rods, and the guides, of the patented structure. They must therefore be held to infringe the second claim of the patent, which is as follows:

"The tubular frame, D, D', and the globe, G, in combination with the plates, C, *p*, the connecting rods, F, and the guides, H, whereby said globe is raised by a suitable lever, and guided or steadied laterally in its movements, for the purpose set forth."

Even though the "suitable lever" be construed as a necessary element of the combination, the defendant's thumb-piece may, by a liberal construction of the claim, very properly be regarded as a fair equivalent therefor.

It is by no means necessary to construe this claim as covering the exact form of lever shown by the drawings or the precise apparatus described in the fourth claim of the patent, with the shoulder, thumb-piece, and loop there mentioned. *Jordan* v. *Moore*, L. R. 1 C. P. 624; *Hamilton* v. *Ives*, 6 Fish. Pat. Cas. 244; *Machine Co.* v. *Murphy*, 97 U. S. 120.

It is apparent, both from the claim and the description, that the inventor did not intend to limit himself to any particular mechanism for raising and lowering the globe. Not only does he say so in express terms, but, had he omitted the statement, the claim would fairly mean this, unless subjected to a most narrow and illiberal construction. To construe the claim as demanded by the defendant, would be to ignore the salutary rule which, discarding subtleties and technicalities, interprets a patent according to its true intent and meaning, so as to give the inventor the benefit of what he has actually invented, even though his claims be carelessly or inartificially drawn. What the patentee evidently meant was that the combination de-

scribed in the claim was to be raised and lower by any suitable lever or device. Something of this kind was a necessary part of, or adjunct to, the combination, but no stress was intended to be laid upon a specific manner of accomplishing this result. The globe needed to be raised and lowered, and he intended to claim, in connection with his combination, any suitable means by which this could be done. Thus construed, there can be no doubt as to the infringement of the claim. No one can place the two lanterns side by side without being convinced of the attempt at evasion.

The wire attached to the elongated sleeve of the top plate of defendant's lantern, (No. 2,) so bent as to form a lateral thumb-piece, performs substantially the same functions as the so-called "lever" of the claim. Both operate to raise or lower the globe by continued upward or downward pressure of the thumb, and, even upon the defendant's theory of interpretation, may fairly be regarded as equivalents. The similarity can be more clearly seen by supposing that the loop, M, of the patent, instead of being fastened to the central tube, had been firmly attached to the lever near its stationary end, and had then extended around the tube, so as to engage it tightly when moved up and down and hold the globe in an elevated position by the friction of the parts. There can hardly be any difference in principle between such a construction and that shown in the infringing lanterns, and referred to in the claim. That defendant's spring performs substantially the same office as complainant's lever in holding down the globe seems to be admitted in the brief submitted by one of the defendant's experts, in which he says: "The use of Colony's spring in the Ham lanterns renders unnecessary any such device as the Stetson 'spring lever,' by which the globe is held down on the burner in the patent in question." In short, the defendant, by means of its spring, thumb-piece, and sleeve, does precisely what complainant does by its "spring lever."

The fact that the defendant's president was, a few months ago, the president of the complainant; that, with one exception, the trustees of the defendant but recently occupied positions of confidence and trust under the complainant, and continually recognized and asserted the validity of the Stetson patent; together with the fact that they have failed to respect the restraining order pending this motion,— predisposes the court to hold the defendant to a stricter accountability than an ordinary infringer. The defendant is not in a position to demand that the rules of equity shall be strained in its behalf. The restraining order should therefore remain in force until the determination of the action referred to. Should the decision be adverse to the validity of the patent, the defendant may move to vacate the order. Should the patent be sustained, the plaintiff may move to substitute a formal injunction.

The bond heretofore required of the complainant should, within five days, be increased to $25,000.