ACME HIGHWAY PRODUCTS CORPO-
RATION, Plaintiff-Appellant,

v.

The D. S. BROWN COMPANY and
Delmont D. Brown, Defendants-
Appellees.

No. 72-1387.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 5, 1972.

Decided Feb. 13, 1973.

John M. Calimafde, New York City, for plaintiff-appellant; Paul H. Blaustein, Sandoe, Hopgood & Calimafde, New York City, and Richard B. Swartzbaugh, Swartzbaugh, Moor & Longthorne, Toledo, Ohio, of counsel.

Robert B. Gosline, Toledo, Ohio, Lloyd C. Root, Root & O'Keeffe, Chicago, Ill., Matthew C. Thompson, Johnston, Root, O'Keeffe, Keil, Thompson & Shurtleff, Chicago, Ill., for defendants-appellees.

Before EDWARDS, CELEBREZZE and MILLER, Circuit Judges.

CELEBREZZE, Circuit Judge.

This is an appeal from an order of the District Court for the Northern District of Ohio, Western Division, finding that two of Appellees' seals infringed on Appellant's patent, Patent No. 3,179,026, and that six others did not infringe. Appellant appeals from that portion of the order finding that some of the seals do not infringe on the patent.

This Court has previously determined that Appellant Acme's patent for a seal for highway joints is valid and has ruled against a claim of joint inventorship by Appellee. 431 F.2d 1074 (6th Cir. 1970). The background of the case can be found in that opinion.

On remand, the District Court stated in its original memorandum that the only remaining issue to be settled was the amount of damages. In its Supplemental Memorandum, the District Court stated that a considerable dispute existed as to which of Defendant-Appellee's products were infringing on Appellant's patent. The Court found that of the eight accused patents—three pavement seals and five bridge seals—two infringed on the patent and six did not infringe. The District Court found that

"The basic essential of the patent in suit is that the unique internal configuration translates vertical forces on the seal into lateral forces to prevent upward or downward slippage of the seal within the joint."

In determining whether a patent has been infringed by an accused device, two tests must be applied. The first determination to be made is whether there is literal infringement of the patent. In making this determination, the words of the claim in the patent must be compared with the accused device. If the accused device is clearly within the claim, then infringement does exist. Graver Mfg. Co. v. Linde Co., 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097 (1950).

The second test is the application of the doctrine of equivalents. The Su-

preme Court explained this doctrine in *Graver, supra*:

"[A] patentee may invoke this doctrine to proceed against the producer of a device 'if it performs substantially the same function in substantially the same way to obtain the same result.' Sanitary Refrigerator Co. v. Winters, 280 U.S. 30, 42 [50 S.Ct. 9, 74 L.Ed. 147]. The theory on which it is founded is that 'if two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form or shape.' Machine Co. v. Murphy, 97 U.S. 120, 125 [24 L.Ed. 935]. The doctrine operates not only in favor of the patentee of a pioneer or primary invention, but also for the patentee of a secondary invention consisting of a combination of old ingredients which produce new and useful results, Imhaeuser v. Buerk, 101 U.S. 647, 655, [25 L.Ed. 945] although the area of equivalence may vary under the circumstances. [Citations omitted] The wholesome realism of this doctrine is not always applied in favor of a patentee but is sometimes used against him. Thus, where a device is so far changed in principle from a patented article that it performs the same or a similar function in a substantially different way, but nevertheless falls within the literal words of the claim, the doctrine of equivalents may be used to restrict the claim and defeat the patentee's action for infringement. Westinghouse v. Boyden Power Brake Co., 170 U.S. 537, 568, [18 S.Ct. 707, 42 L.Ed. 1136]." 339 U.S. at 608–609, 70 S.Ct. at 856.

Appellant Acme contends that the claims made in its patent read directly on the accused seals. *See* American Technical Machine Corp. v. Caparotta, 339 F.2d 557 (2d Cir. 1964). Acme refers specifically to infringement of claim 1 of its patent which provides:

"A sealing strip for joints comprising:

(a) an elongated hollow body of low crystallization elastomeric material having two thin side walls, a top wall, and a bottom wall;

(b) each of said side walls being substantially flat, equal in length, and substantially longer than said bottom and top walls;

(c) said hollow body having an internal truss structure connected to said side walls so that a strong support is provided thereby to oppose lateral deformation of said walls; and

(d) said truss structure having diagonal rib members which are interconnected and have spaces therebetween which will permit said rib members to collapse into said spaces when said side walls are laterally compressed; and

(e) said rib members forming a plurality of connected triangular sections, one of the members of each of said triangular sections being a portion of said side walls."

The other claims of the patent are set forth in the margin.[1]

---

1. 2. The sealing strip for joints as set forth in claim 1 wherein said top wall comprises two downwardly inclined straight wall sections which meet and are joined at their lower ends to form a central apex, said sections each being thicker than said rib members, and at their upper ends meeting and joining their corresponding side walls to form a point, so that said straight wall sections will deflect downwardly with minimum upward bulge when said side walls are compressed laterally.

3. The sealing strip for joints as set forth in claim 1 wherein said bottom wall comprises two downwardly inclined wall sections which meet and are joined at their lower ends to form a central apex, and are connected at their upper ends to their respective side walls, so that the sealing strip can more readily be fitted into a joint.

4. The sealing strip for joints as set forth in claim 1, wherein said material is neoprene synthetic rubber.

5. A sealing strip for joints comprising:

(a) an elongated hollow thin-walled body of low crystallization elastomeric material having side walls, a bottom wall, and a top wall,

A cross-section of Acme's patented seal is shown below in Figure 1. Figures 2 and 3 are cross-sections of seals admitted by Appellee to be infringing on the patent.

Figure 1

Figure 2

Figure 3

Acme Seal
Patent No. 3,179,026

(b) a pair of diagonal support ribs disposed within said body and which converge and join at their upper end with a central point of said top wall, each of said ribs at their lower ends being integral with one of said side walls adjacent the center portion thereof;

(c) a second paid of diagonal support ribs disposed within said body which cross and are integral with each other at approximately their mid-point, and are each integral at their upper end with the central portion of one of said walls, and each such diagonal support rib being integral at its lower end with the other of said side walls adjacent the lower end thereof; and

(d) said crossed diagonal support members each making an angle of at least 30 degrees with said walls.

6. The sealing strip for joints as set forth in claim 5 wherein said top wall comprises two downwardly inclined straight wall sections which meet and are joined at their lower ends at a central apex, each of said straight wall sections being thicker than said diagonal support ribs, and at their upper ends meeting their corresponding side wall at a point so that said straight wall sections will deflect downwardly with minimum upward bulge when said side walls are compressed.

7. The sealing strip as set forth in claim 5 wherein said bottom wall comprises two downwardly inclined sections which meet and are joined at their lower ends at a central apex and are connected at their upper ends to their respective side walls, so that the sealing strip is more readily fitted into a joint.

8. A sealing strip for joints comprising:

(a) an elongated hollow thin-walled body of low crystallization elastomeric materials having side walls, a bottom wall and a top wall, said side walls being substantially flat;

(b) a pair of diagonal support ribs disposed within said body and which converge and are joined at their upper end with a central point of said top wall, each of said ribs at their lower ends being integral with one of said side walls adjacent the center portion thereof;

(c) a second pair of diagonal support ribs disposed within said body which cross and are integral with each other at approximately their mid-point, and are each integral at their upper end with the central portion of one of said side walls, and each such diagonal support rib being integral at its lower end with the other of said side walls adjacent the lower end thereof;

(d) said crossed diagonal support members each making an angle of at least 30 degrees with said walls;

(e) said top wall comprising two downwardly inclined straight wall sections which meet and are joined at their lower ends at a central apex, said sections each being thicker than said diagonal support members, and at their upper ends meeting their corresponding side wall to form a point so that said straight wall sections will deflect downwardly with minimum upward bulge when said side walls are compressed; and

(f) said bottom wall comprising two inclined sections which meet and are joined at their lower ends and are connected at their upper ends to their respective side walls, so that the sealing strip is more readily fitted into a joint.

Cross-sections of the accused seals involved in this appeal are shown in Figures 4 through 9.

Figure 4    Figure 5    Figure 6

Figure 7

Figure 8

Figure 9

---

Appellee contends that the accused seals do not infringe on Claim 1 of the patent because the patented seal and the accused seals differ significantly in several respects:

(a) Each of the side walls of the seals is not *substantially longer* than the top and bottom walls. In all cases the side walls are *shorter* than or about the *same* as the top and bottom walls.

(b) *Thin* side walls are defined indefinitely in the patent. The side walls of Figures 5, 7 and 9 are thick, not thin.

(c) The side walls of Figures 5, 6, 8 and 9 are not *substantially flat.*

(d) The diagonal rib members do not form a plurality of connected triangular sections with one member of *each* triangular section being a portion of the side *wall.*

(e) The sections forming the top wall of Figure 6 and Figure 9 are not thicker than the rib members.

(f) The top walls of Figures 5, 6 and 8 have an arcuate configuration rather than two downwardly inclined *straight* wall sections.

Similar contentions are made regarding the other claims of the patent.

The District Court found that none of the six accused seals come within the literal description of the patent. The Court then considered whether there was infringement under the doctrine of equivalents:

"Plaintiff claims that the other seals, although markedly different in form from the patented seal, are nevertheless, under the doctrine of equivalents, to be considered as infringing. When closely scrutinized, however, plaintiff's contentions in this respect seem to be that since the other seals serve the same purpose, utilize the same or similar material, and bear some superficial resemblance in appearance to the patented seal, they are equivalent to it.

"However, it is too clear to require citation of authority that an inventor may not patent a function, and basically, that is what the plaintiff's claims amount to, particularly with respect to the bridge seals, represented by Exhibits 36, 37, 52, 53, and 54." [Figures 5, 6, 7, 8, and 9].

We do not find this to be a correct statement of the law. In determining whether equivalence exists in an accused device, a court must not emphasize form over substance. Graver Tank & Mfg. Co. v. Linde Air Products Co., 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097 (1950); Laitram Corp. v. Deepsouth Packing Co., 443 F.2d 928, 933 (5th Cir. 1971). "If two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form, or shape." *Graver, supra*, 339 U.S. at 608, 70 S.Ct. at 856; Machine Co. v. Murphy, 97 U.S. 120, 125, 24 L.Ed. 935 (1877). We find that the District Court incorrectly applied the doctrine of equivalents to Appellant's patent. The Supreme Court in *Graver* went on to say:

"What constitutes equivalency must be determined against the context of the patent, the prior art, and the particular circumstances of the case. Equivalence, in the patent law, is not the prisoner of a formula and is not an absolute to be considered in a vacuum. It does not require complete identity for every purpose and in every respect. In determining equivalents, things equal to the same thing may not be equal to each other and, by the same token, things for most purposes different may sometimes be equivalents. Consideration must be given to the purpose for which an ingredient is used in a patent, the qualities it has when combined with the other ingredients, and the function which it is intended to perform. An important factor is whether persons reasonably skilled in the art would have known of the interchangeability of an ingredient not contained in the patent with one that was." 339 U.S. at 609, 70 S. Ct. at 856.

■■ We hold that the accused seals do, under the doctrine of equivalents, infringe on Acme's patent. We therefore find it unnecessary to decide the question of literal infringement. While the Supreme Court has stated that a finding of equivalence is a determination of fact, *Graver, supra*, 339 U.S. at 609, 70 S.Ct. 854, where mixed questions of law and fact are presented and there is error as to the law, we may reverse the District Court free of the clearly erroneous rule. Up-Right, Inc. v. Safway Products, Inc., 315 F.2d 23 (5th Cir. 1963). However, a review of the factual determinations of the District Court makes this approach unnecessary.

The findings of the District Court were:

"Plaintiff contends that these seals are essentially two or three of the patented seals joined firmly together. Even if it be conceded that this were literally true, which it is not, it is

quite apparent from examining the exhibits, and from the expert testimony concerning them, that with respect to the conversion of vertical forces into lateral forces by the internal construction of the seals, which is what the patent covers, this would not happen when two seals are fastened together as it would with one single seal. Moreover, it is very clear that, as the defendant contends the bridge seals represented by Exhibits 36, 37, 52, 53, and 54 [Figures 5, 6, 7, 8, and 9], do not function by converting vertical into lateral forces. The lateral forces are produced entirely by the structure of the seals and the vertical forces are merely absorbed and released by this same structure."

The testimony in the record does not support this finding. Indeed, the testimony on this point supports the theory of vertical to horizontal translation of forces. We hold, therefore, that the determination that the accused seals do not function by converting vertical forces into lateral forces is clearly erroneous.

■ An inventor is entitled to a range of equivalents commensurate with the scope of his invention. Up-Right, Inc. v. Safway Products, Inc., supra; Southern Saw Service v. Pittsburgh-Erie Saw Corp., 239 F.2d 339 (5th Cir. 1956). Appellee contends that previous patents have disclosed hollow elastomer seals for paving joints and that the Acme seal is merely an improvement over these seals and must be given a narrow range of equivalents. A review of the prior art of the industry indicates, however, that the patent in this case represented a significant improvement over the prior art and, as noted in our previous opinion on this case, the District Court described its initial success as "an accomplishment hitherto unheard of." 431 F.2d at 1077. The invention is, therefore, entitled to a liberal range of equivalents. Up-Right, Inc. v. Safway Products, Inc., supra; Southern Saw Service v. Pittsburgh-Erie Saw Corp., supra; Royal-McBee Corp. v. Smith-Corona Marchant, Inc., 295 F.2d 1 (2d Cir. 1961); Nelson v. Batson, 322 F.2d 132 (9th Cir. 1963). Accordingly, we find that there is substantial identity between the teachings of Appellant's patent and the accused seals in structure, mode of operation and result to be accomplished. Graver Tank & Mfg. Co. v. Linde Air Products Co., supra. See Rothstein v. Atlanta Paper Co., 321 F.2d 90 (5th Cir. 1963); Royal McBee v. Smith-Corona Marchant, Inc., supra.

Appellee also contends that the means used to achieve the sealing of the joints is substantially different from the patented seal. A reading of the patented claims, however, indicates that the significant improvement achieved results from the unique internal configuration of neoprene ribs. This truss-like structure is the basis of the patented seal. To say that Appellant's patent is limited only to the exact configuration shown in the patent and described in the claim would afford little protection for the invention and render it a "hollow and useless thing." Graver Tank & Mfg. Co., Inc. v. Linde Air Products Co., 339 U.S. at 607, 70 S.Ct. 854. See Nelson v. Batson, supra, 322 F.2d at 135. An accused device cannot escape infringement by merely adding features, if it otherwise has adopted the basic features of the patent. Aluminum Co. of America v. Sperry Products, Inc., 285 F.2d 911 (6th Cir. 1960). While the accused seals may offer some improvement over the design of the patented seal, they all utilize the truss-like structure, the basic concept of the patent. We find that the essence of the accused seals is the truss-like structure which is the significant contribution made by Appellant's patent. We hold, therefore, that the six accused seals do infringe on Appellant's patent. The judgment of the District Court is reversed and the case is remanded to the District Court for proceedings consistent with this opinion.